UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SARAH R.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. C22-5877-SKV

ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff was born in 1991, has one year of college education, and has worked as a cashier/doughnut fryer at a grocery store. AR 316. Plaintiff was last gainfully employed in 2013. *Id.*

In September 2019, Plaintiff applied for benefits, alleging disability as of January 10, 2018. AR 277-89.[1]  Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing.  AR 148-51, 160-68.  After the ALJ conducted a hearing in June 2021 (AR 32-70), the ALJ issued a decision finding Plaintiff not disabled.  AR 16-26.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date.

**Step two**: Plaintiff has the following severe impairments: depressive disorder, anxiety disorder, and recurrent abscesses.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity (RFC)**:  Plaintiff can perform light work with the following nonexertional limitations: she should have no more than occasional exposure to extreme heat, wetness, and humidity.  She should not be required to work in direct sunlight.  She can complete simple as well as complex tasks in two-hour increments for a normal eight-hour workday and workweek, with intermittent interruptions that do not interfere with productive work (defined as interruptions totaling less than 5% of a workday).  She can have occasional brief and superficial contact with the general public and co-workers, and can work in proximity to others but not as part of a team.  She can adapt to "low pressure" changes in work environment (meaning can adapt to changes consistent with simple work) and can follow goals set by others.

**Step four**: Plaintiff has no past relevant work.

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 16-26.

---

[1] At the administrative hearing, Plaintiff withdrew her application for Disability Insurance Benefits and amended her alleged onset date to September 9, 2019.  AR 16, 38-39.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P, App. 1.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 2

1    The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-7. Plaintiff appealed the final decision of the Commissioner to this Court. Dkt. 4.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

//

//

# DISCUSSION

Plaintiff argues the ALJ erred at steps two, three, and five of the sequential evaluation; in discounting Plaintiff's testimony; in assessing the medical opinion evidence; and in assessing Plaintiff's RFC.  The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

### A.     The ALJ Did Not Harmfully Err at Step Two

A medically determinable impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques, and established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a statement of symptoms.  20 C.F.R. § 416.921.

In this case, the ALJ noted *inter alia* at step two that Plaintiff's therapist had diagnosed her with unspecified bipolar disorder, but that a physician doubted this diagnosis.  AR 19 (citing AR 606, 609).  The ALJ found that because Plaintiff's therapist was not an acceptable medical source who could diagnose a medically determinable impairment, her bipolar disorder diagnosis was not sufficient to establish the existence of this impairment.  AR 19.

Plaintiff argues that the ALJ erred in finding that her bipolar disorder was not medically determinable because the ALJ "ignore[d] the bulk of the medical evidence concerning [her] bipolar disorder."  Dkt. 11 at 5 (citing AR 549, 861-62).  The evidence Plaintiff cites in support of that argument does not advance her claim.  That Plaintiff was provisionally diagnosed with bipolar disorder by an examining psychologist (AR 549), or that she reported bipolar symptoms to medical providers treating her physical problems (AR 861-62), does not establish that the ALJ erred in finding that Plaintiff's bipolar disorder was not established by medical evidence consisting of signs, symptoms, and laboratory findings, as required in the regulations.  Plaintiff's

contrary suggestion notwithstanding (Dkt. 11 at 5 (suggesting that the ALJ found that Plaintiff "did not pass the *de minimis* screening device to dispose of groundless claims at Step Two")), the ALJ did not resolve this case at step two.  The ALJ went on to consider the impact of Plaintiff's mental limitations on her functioning.  *See* AR 19-23.  Accordingly, Plaintiff has not shown harmful legal error flowing from the ALJ's exclusion of bipolar disorder as a medically determinable impairment at step two.  *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

Plaintiff goes on to argue that the ALJ also erred in failing to address her post-traumatic stress disorder (PTSD) at step two.  Dkt. 11 at 5 (citing AR 816, 826, 828, 854).  But the record does not establish that Plaintiff was diagnosed with PTSD by an acceptable medical source.  A therapist provided a provisional diagnosis of PTSD at Plaintiff's request and suggested that she discuss this condition with another therapist (AR 826, 828, 854), but Plaintiff points to no evidence that a firm diagnosis was ever established by an acceptable medical source.  Moreover, although Plaintiff contends that she had "significant functional limitations stemming from [PTSD] that were not addressed by the ALJ[,]" Plaintiff fails to identify any such limitation.  Dkt. 11 at 5.  For all of these reasons, Plaintiff has failed to show that the ALJ harmfully erred in failing to discuss her PTSD at step two.

B. **The ALJ Did Not Harmfully Err at Step Three**

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations.  "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original; citations omitted).

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 5

Plaintiff bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A mere diagnosis does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). "'[An impairment] must also have the *findings* shown in the Listing of that impairment.'" *Id*. at 1549-50 (quoting § 404.1525(d); emphasis added in *Key*). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

Plaintiff contends that the ALJ erred in finding at step three that she did not meet Listing 12.03 or Listing 12.06 because she did not satisfy all of the requirements of those listings, specifically the "paragraph C" criteria for those listings. Dkt. 11 at 10-11. In order to satisfy the paragraph C criteria for Listing 12.03 or 12.06, a claimant must show (1) a medically documented history of an impairment of at least two years; (2) treatment, psychosocial support, and highly structured settings that are ongoing and diminishes symptoms; and (3) marginal adjustment, meaning minimal ability to adapt to change. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(C), 12.06(C). The ALJ found that Plaintiff did not satisfy the paragraph C criteria because the evidence did not show that the third prong (marginal adjustment) was met. AR 20.

Plaintiff argues that the ALJ erred in focusing only on the third prong, without addressing the first and second prongs. Dkt. 11 at 10-11. This argument overlooks that in order to satisfy the paragraph C criteria, a claimant must satisfy all three prongs. The ALJ's failure to discuss the other two paragraph C prongs is at most harmless error, if the ALJ is correct that the record fails to establish that Plaintiff satisfies the third prong. Plaintiff has failed to cite evidence suggesting that she satisfies the third prong, and thus has failed to allege harmful step-three error. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(G)(2)(c) ("'Marginal adjustment' means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to

adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports[.] Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.").

Plaintiff goes on to argue that the ALJ erred in finding that her recurrent skin abscesses did not meet a Listing (AR 19), although she does not identify a particular Listing that she contends that she did meet. Dkt. 11 at 11-12. Plaintiff has failed to meet her burden to show that the ALJ harmfully erred in finding that her skin condition did not satisfy the criteria of any section of Listing 8.00 (skin disorders). *See, e.g.*, *Browning v. Astrue*, 2010 WL 1511667, at *6 (D. Ariz. Apr. 15, 2010) (". . . [E]ven if the ALJ's discussion at step three was insufficient as it relates to either the heart or spinal impairments, this error was harmless because . . . the record is devoid of evidence establishing that [the claimant's] impairments met or equaled any listed impairment, and [the claimant] points the Court to none.").

Plaintiff goes on to argue that the ALJ erred in accounting for her abscesses in the RFC assessment. Dkt. 11 at 11-12. The ALJ found that Plaintiff's abscesses were successfully treated with antibiotics (AR 22), and Plaintiff has not cited any medical evidence undercutting that finding or supporting the existence of any particular functional limitation. The ALJ stated that the environmental limitations in the RFC assessment (prohibition on direct sunlight, and no more

than occasional exposure to extreme heat, wetness, and humidity) accounted for Plaintiff's symptoms and medication side effects with respect to her abscesses, and Plaintiff has not shown that those limitations are inadequate.

### C. The ALJ Did Not Harmfully Err in Discounting Plaintiff's Testimony

The ALJ summarized Plaintiff's allegations and explained that she discounted Plaintiff's testimony because: (1) the objective medical evidence is inconsistent with Plaintiff's testimony because it shows that many of Plaintiff's symptoms improved with treatment, and that Plaintiff did not comply with all treatment recommendations; (2) Plaintiff's impairments did not prevent her from caring for family members, shopping, performing household tasks, driving, managing money, and attending appointments; and (3) Plaintiff's mental health conditions were treated only with medication and counseling, and many of her objective mental findings were normal. AR 21-23.  In the absence of evidence of malingering, an ALJ must provide clear and convincing reasons to discount a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff contends that although the ALJ stated that the medical evidence was inconsistent with her testimony, the ALJ failed to link evidence with her testimony and therefore failed to provide legally sufficient reasons to discount her testimony. Dkt. 11 at 13.  Plaintiff is mistaken, however.  The ALJ's reasoning can be detected in her discussion of the medical evidence: the ALJ noted that Plaintiff reported improvement in her mental symptoms with medication on multiple occasions, and that at one point she stopped taking a medication and felt better without it.  AR 21-22.  The ALJ also noted that, against medical advice, Plaintiff refused to try a form of therapy that her provider recommended.  AR 22.  The ALJ cited two therapy appointments during which Plaintiff's provider described her as having "no perceived impairment." *Id*. (citing

AR 788-89, 794). Other treatment notes contain the same indication. *See, e.g.*, AR 790, 796, 800, 804, 808, 812, 814, 817, 820, 824. The ALJ also noted that Plaintiff's recurrent abscesses were treated with and resolved by medication. AR 22. This evidence of improvement is inconsistent with Plaintiff's testimony of disabling limitations even with treatment, and the ALJ thus provided a clear and convincing reason to discount Plaintiff's testimony. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (contrary to plaintiff's claims of lack of improvement, physician reported symptoms improved with use of medication). Any errors in the ALJ's other lines of reasoning are therefore harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Plaintiff goes on to argue that the ALJ erred in failing to account for the side effects of her medication. Plaintiff testified that some of her medications make her drowsy, but as the ALJ noted (AR 23), Plaintiff also testified that she takes most of those medications at bedtime and if she is careful about the timing of when she takes them, she can avoid the negative side effects. AR 46-47, 57. Plaintiff also contends that the ALJ failed to account for her testimony that she cannot leave her house for 10 days while she is taking medication for her abscesses. Dkt. 11 at 15 (citing AR 60). Plaintiff's testimony on this point is not clear, however: she testified that her course of antibiotics lasts 10 days, and sometimes a second course is needed, but it is not clear that she alleged that she needed to stay inside her house during that entire time. *See* AR 60. Other parts of her testimony conflict with such a reading, as well. *See* AR 45-47 (Plaintiff's testimony that her skin medications require her to stay out of the sunlight and wear loose clothing), 50 (Plaintiff's testimony that she goes out to eat twice a week), 51 (Plaintiff's testimony that her fiancé wants her to go on walks outside, but she does not due to feeling

physically uncomfortable with moving and because of her need to avoid sunlight). Plaintiff has therefore not shown that she alleged a side effect that the ALJ failed to acknowledge.

Next, Plaintiff argues that the ALJ erred in failing to consider her allegations related to her teeth and jaw problems, which led to her perceived loss of hearing and caused difficulty eating and sleeping. Dkt. 11 at 16. But the ALJ addressed those issues at step two (AR 19) and explained that her treatment for these conditions before the alleged onset date helped her symptoms, and that there "is no evidence of any work-related functional limitations" caused by Plaintiff's jaw or tooth conditions. *Id*. Plaintiff did not assign error to this finding and has not shown that the ALJ overlooked any particular testimony or evidence of functional limitations related to her tooth or jaw issues.

For all of these reasons, the Court finds that Plaintiff has failed to establish harmful legal error in the ALJ's assessment of her subjective allegations.

**D.     The ALJ Did Not Err in Assessing Medical Opinion Evidence**

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 416.920c(a)-(c). An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Wendy Hartinger, Psy.D., examined Plaintiff in July 2019 and completed a DSHS form opinion describing mental symptoms and limitations that Dr. Hartinger expected to persist for 6-12 months. AR 546-50. The ALJ noted that Dr. Hartinger identified moderate cognitive, adaptation, decision-making and goal-setting limitations, and marked limitations in Plaintiff's ability to communicative effectively, maintain appropriate behavior, maintain a schedule, and

complete a normal workday/workweek, and the ALJ found this opinion to be partially persuasive. AR 23-24. The ALJ stated that Dr. Hartinger's mental status examination did not fully support her conclusions because the examination revealed mostly normal findings, with the exception of some deficits in delayed memory and thought content, and the ALJ found these abnormalities to be insufficiently severe to support the degree of limitation that Dr. Hartinger described. AR 24 (citing AR 550). The ALJ also found Dr. Hartinger's conclusions to be inconsistent with the record, which included many normal mental status examination findings as to Plaintiff's speech, motor activity, affect, cognition, perception, thought process, behavior, insight, and judgment. AR 24.

      Plaintiff argues that the ALJ erred in pointing to mental status examination findings without explaining how they either fail to support or contradict Dr. Hartinger's conclusions. Dkt. 11 at 7. The findings cited by the ALJ directly pertain to the limitations that Dr. Hartinger identified, however. For example, although Dr. Hartinger opined that Plaintiff was markedly limited in her ability to communicate and maintain appropriate behavior, Dr. Hartinger's findings as to Plaintiff's speech and behavior did not corroborate marked limitations. *See* AR 554 (indicating that Plaintiff's speech was rapid, and at times pressured, but that she was fully engaged in the interview although anxious and nervous). Moreover, the ALJ cited other mental status examinations where Plaintiff was described with normal cognition and speech, cooperative behavior, and fair insight and judgment, which pertain to the cognitive, communication, behavioral, and decision-making limitations Dr. Hartinger identified. AR 24. The ALJ properly considered Dr. Hartinger's own findings as well as other relevant findings when assessing whether Dr. Hartinger's opinion was supported and consistent with the record.

1     Plaintiff goes on to argue that the ALJ erred in failing to mention that she reported
2 symptoms that would support the limitations Dr. Hartinger identified (Dkt. 11 at 7), but the
3 regulations instruct the ALJ to consider the *objective* support for a medical opinion, as well as
4 the opinion's consistency with other medical evidence in the record.  *See* 20 C.F.R. §
5 416.920c(C)(1)-(2).  Furthermore, the ALJ discounted Plaintiff's self-report, which explains why
6 the ALJ did not look to her testimony when evaluating Dr. Hartinger's opinion.

7     Plaintiff also points to evidence in the record that she contends was consistent with Dr.
8 Hartinger's conclusions (Dkt. 11 at 8), but this does not establish error in the ALJ's decision
9 because it does not undercut the substantial evidence supporting the ALJ's interpretation of the
10 evidence.  The treatment notes cited by Plaintiff predate the amended alleged onset date (AR
11 553, 554, 555, 561, 565, 569, 573, 575, 577, 583, 587, 591, 597, 599, 610) and the ALJ did not
12 err in focusing primarily on Plaintiff's many normal findings during the adjudicated period,
13 particularly because Dr. Hartinger herself acknowledged that Plaintiff had just started mental
14 health treatment at the time of her examination and "she may be able to work and/or attend
15 school again with a stabilized mood and decreased anxiety."  AR 549.

16     Because the ALJ reasonably found Dr. Hartinger's unsupported by her examination
17 findings and inconsistent[4] with other findings in the record, the ALJ did not err in finding Dr.
18 Hartinger's opinion less persuasive.

19     **E.     The ALJ Did Not Harmfully Err in Assessing Plaintiff's RFC**

20     Plaintiff argues that the ALJ erred in crafting an RFC assessment without the assistance
21 of a medical expert, because the ALJ was not qualified to "competently translate" the clinical

---

[4] Plaintiff's opening brief argues that the ALJ failed to make a consistency finding (Dkt. 11 at 8), but Plaintiff is mistaken.  The ALJ explicitly contrasted Dr. Hartinger's conclusions with other evidence in the longitudinal record (AR 24 ("The opinion is not fully consistent with the other medical evidence of record, which generally shows . . .")), which is a consistency finding.  *See* 20 C.F.R. § 416.920c(C)(2).

findings into an RFC assessment. Dkt. 11 at 17. This argument fails to account for the regulations that explicitly task ALJs with determining a claimant's RFC based on a review of the entire record (20 C.F.R. §§ 416.945, 416.946), and, as Plaintiff acknowledges (Dkt. 11 at 17) Ninth Circuit case authority also indicates that it is an ALJ's responsibility to craft an RFC assessment. Dkt. 11 at 17 (citing *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)). Plaintiff has not shown that the ALJ's lack of medical expertise rendered her unable to determine Plaintiff's RFC, and has not cited any authority requiring that an ALJ's RFC correspond to a medical opinion, and the Court is aware of authority holding the opposite. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.").

  Plaintiff goes on to argue (Dkt. 11 at 17), however, that although the ALJ found the State agency opinions to be persuasive, she did not adopt all of the limitations identified in those opinions, namely the requirement that Plaintiff receive breaks every two hours and that she would "do best in an environment where she's not required to work in direct coordination with others; able to work near others." *See* AR 97, 123. This argument lacks merit. The ALJ's RFC assessment requires that Plaintiff work in two-hour increments. *See* AR 20. The ALJ also accounted for the prohibition on direct coordination with co-workers by explaining that Plaintiff could work in proximity to others but not as part of a team. *Id*. An ALJ's RFC assessment need not repeat medical opinions verbatim, but must be consistent with the limitations described in credited medical opinions. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Because the ALJ's RFC assessment is indeed consistent with the State agency

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 13

opinions as to Plaintiff's ability to work with others, Plaintiff has failed to show that the ALJ erred in accounting for those opinions when crafting the RFC assessment.

Lastly, Plaintiff contends that the ALJ's RFC assessment is internally inconsistent because it indicates that Plaintiff can complete simple and complex tasks, but can adapt to changes in work environment consistent with simple work. *See* AR 20-21. The Commissioner contends that it is possible that a job involving complex tasks may involve changes in work environment that would generally occur only in simple work, and emphasizes that even if these parts of the RFC assessment are internally inconsistent, Plaintiff has failed to show how this inconsistency resulted in harm. Dkt. 13 at 15. Plaintiff did not address this argument in the reply brief (Dkt. 14 at 6), and thus failed to meet her burden to show that she was harmed by this part of the ALJ's RFC assessment.

Because Plaintiff has failed to meet her burden to show harmful legal error in the ALJ's RFC assessment, the Court rejects this assignment of error.

### F. The ALJ Did Not Err at Step Five

At step five, the Commissioner bears the burden to show that a claimant is not disabled because he or she can perform work that exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). When an ALJ considers vocational expert (VE) testimony that a claimant can perform certain representative occupations, the Dictionary of Occupational Titles (DOT) raises a rebuttable presumption as to the classification and requirements of those jobs. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995). An ALJ has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).

In this case, the ALJ relied on the VE's testimony that Plaintiff could perform the jobs of production assembler, bench assembler, and collator operator to find her not disabled at step five. AR 25. The VE testified that Plaintiff's restriction on teamwork eroded the job numbers for the production assembler and bench assembler jobs (AR 65-66), but the ALJ found that the number of jobs that remained viable were nonetheless significant. AR 25 (referencing more than 200,000 jobs in the national economy). The VE testified that the DOT does not address the teamwork limitation, and that her testimony in that regard is based on her professional expertise. AR 67-68.

Plaintiff contends that the VE's testimony conflicts with the DOT in two ways, and that those conflicts were not resolved by the ALJ. The Court will address each alleged inconsistency in turn.

    1. *Teamwork Limitation*

Plaintiff argues that the VE's testimony that she could perform the production assembler and bench assembler jobs despite her restriction on teamwork was inconsistent with the job definitions provided in the DOT, and that the ALJ erred by failing to resolve the inconsistency. Dkt. 14 at 3. Both occupations indeed require "frequent work as a member of an assembly group," but the VE explained that only about half of the jobs require the teamwork precluded by the ALJ. AR 65-66. Participation in a group does not necessarily require teamwork or more than superficial interaction, and the ALJ explicitly found that Plaintiff could work in proximity to co-workers with occasional brief and superficial interaction. *See* AR 20. The case cited by Plaintiff does not indicate that more than half of the production assembler or bench assembler jobs require teamwork; instead, it stands for the proposition that a production assembler job requires coordination with coworkers, and the VE in that case did not acknowledge any degree of

inconsistency between that job requirement and the ALJ's RFC assessment. *See* Dkt. 11 at 2-3 (citing *Tran v. Colvin*, 2013 WL 1855759 (C.D. Cal. Apr. 30, 2013)).

But here, the ALJ precluded teamwork with co-workers and the VE acknowledged that, in her experience, half of the production assembler jobs and bench assembler jobs do require teamwork. AR 65-66. Plaintiff's briefing failed to acknowledge the VE's testimony about the teamwork required in many of the production assembler and bench assembler jobs, which undercuts her argument that the VE's testimony conflicts with the DOT, or that the VE's testimony failed to explain why she believed Plaintiff's social limitations would not preclude her from performing these jobs. Accordingly, Plaintiff has failed to establish harmful legal error in the ALJ's reliance on the VE's testimony with respect to the teamwork limitation.

## 2. "Low Pressure" Changes

Plaintiff notes that the ALJ found that she could adapt to only "low pressure" changes in the work environment, and interprets this limitation to mean that she was precluded from fast-paced work. Dkt. 11 at 3. This interpretation is at odds with the ALJ's RFC assessment, which provides a definition for the "low pressure" changes in work environment that the ALJ had in mind: the ALJ explained that this limitation meant that Plaintiff "can adapt to changes consistent with simple work[.]" AR 21. The ALJ did not intend to address Plaintiff's ability to maintain pace in imposing this limitation, and thus Plaintiff's arguments regarding the pace requirements of the step-five jobs do not advance her assignment of error. *See* Dkt. 11 at 3.

Plaintiff goes on to argue that the ALJ's adaptation limitation is inconsistent with her finding that Plaintiff could complete complex tasks. Dkt. 11 at 3-4. But task complexity and adaptation to change are distinct concepts, as discussed *supra*, and Plaintiff has cited no authority to support her argument of internal inconsistency. Plaintiff contends that Dr. Hartinger's opinion

would support the existence of additional cognitive limitations (beyond those included in the RFC assessment) that would preclude Plaintiff's ability to complete jobs requiring level-two reasoning (Dkt. 11 at 3-4), but the ALJ found Dr. Hartinger's opinion to be not fully persuasive and cited evidence of Plaintiff's normal cognitive functioning as inconsistent with that opinion. AR 23-24.  Because, as explained *supra*, Plaintiff has not shown that the ALJ erred in finding Dr. Hartinger's opinion less persuasive, and the ALJ's RFC assessment as written is consistent with the level-two reasoning required in the step-five jobs, Plaintiff has failed to show error in the ALJ's decision in this regard.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 26th day of April, 2023.

*S. Kate Vaughan*

S. KATE VAUGHAN
United States Magistrate Judge